UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL RICHIEZ, *et al.*,
Plaintiffs,

-v-

TRYAX REALTY MANAGEMENT, INC., *et al.*,
Defendants.

24-CV-8578 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Daniel Richiez, individually and on behalf of all others similarly situated, brings this putative collective and class action against Defendants Tryax Realty Management, Inc. ("Tryax"), Michael Schmelzer, Miguel Leon, and Cesar Maldonaldo (together, the "Individual Defendants"), and several corporate entities that own buildings managed by Tryax (together, the "Corporate Defendants") (collectively, the "Defendants"), alleging that Defendants' failure to pay Richiez promptly and on a weekly basis violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 190, *et seq.* (*See generally* ECF No. 4.)

Before the Court is Plaintiff's motion to conditionally certify a collective action with respect to the FLSA claim; to certify a class pursuant to Federal Rule of Civil Procedure 23 with respect to the NYLL claim; to appoint Plaintiff as class representative and Plaintiff's counsel as class counsel; to authorize issuance of a proposed notice to potential collective and class members; and to order Defendants to provide information to identify potential class members. (*See* ECF No. 102.) For the reasons that follow, that motion is granted in full.

# I. Background

## A. Factual Background[1]

Tryax is a real estate management company that manages apartment buildings. (ECF No. 4 ("Compl.") ¶ 7.) The Corporate Defendants own buildings in Manhattan and the Bronx. (*Id.* ¶¶ 8-60.) Tryax manages the real estate assets of the Corporate Defendants. (*Id.* ¶¶ 66-68.) The Individual Defendants are current and former officers of Tryax. (*Id.* ¶¶ 74-87.) Individual Defendant Michael Schmelzer owns (at least in part), controls, and operates all of the Corporate Defendants. (ECF No. 106-3 ("Joint Stipulation of Facts" or "JSF") ¶ 7.) At all relevant times, Defendants shared uniform payroll systems and policies. (*Id.* ¶ 6.)

The Corporate Defendants are managed out of two offices: one at 60 Cutter Mill Road, Suite 208 in Great Neck, New York, and the other at 1746 Walton Avenue in Bronx, New York. (*Id.* ¶ 8.) The Great Neck office is the corporate headquarters for the Corporate Defendants. (*Id.* ¶ 9.) Thus, the executive team for the Corporate Defendants sets all policies, pay rates, and generally makes strategic decisions for the Corporate Defendants in the Great Neck office. (*Id.*) Additionally, personnel responsible for the accounting, bookkeeping, and human resources functions for the Corporate Defendants work out of the Great Neck office. (*Id.* ¶ 10.) The Bronx office handles the daily supervision of the Corporate Defendants' building employees, including its superintendents ("supers") and porters working in the Bronx and Manhattan. (*Id.* ¶ 12). The Bronx Office is also responsible for leasing, information technology, interfacing with tenants, ordering buildings supplies, and distributing paychecks to non-managerial employees. (*Id.* ¶ 13.)

---

[1] The following facts are taken from the parties' pleadings, class certification briefing, and accompanying declarations, *see Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 388 (S.D.N.Y. 2000) ("[A] court may consider material outside the pleadings in determining the appropriateness of class certification."), and are undisputed unless otherwise noted.

Richiez is a super at 1027 Walton Avenue, one of the apartment buildings owned and managed by Defendants. (Compl. ¶ 6.) Julio Batista is a porter and has worked at several buildings owned by Tryax. (ECF No. 103 ¶¶ 2-3.) From March 29, 2018, to July 2, 2026, Defendants employed forty or more employees—porters and supers, including Batista and Richiez—who performed non-managerial work to maintain Defendants' buildings. (JSF ¶¶ 1-3.) Each of those employees spent more than 25% of their working time performing physical labor, such as facilitating repairs and building maintenance. (*Id.* ¶¶ 4-5.) From no later than March 29, 2018, to May 31, 2026, Defendants paid those employees every other week. (*Id.* ¶ 14.) Since June 1, 2026, Defendants have paid those employees every week. (*Id.* ¶ 15.)

**B. Procedural Background**

On November 13, 2024, Richiez filed a complaint, individually and on behalf of a putative collective and class, asserting that "Defendants' failure to pay Plaintiffs promptly and on a weekly basis" violates the FLSA and the NYLL. (Compl. ¶ 1.) Defendants answered on November 14, 2025. (ECF No. 90.) On June 7, 2026, Batista filed a "Consent to Join" this action as an opt-in plaintiff and appointed Richiez's counsel as his own. (*See* ECF No. 98.)

On July 30, 2026, Richiez filed a motion for class and collective certification (ECF No. 102), an accompanying memorandum of law (ECF No. 107 ("Mem.")), a joint stipulation of facts (*see* JSF), and several supporting declarations (*see* ECF Nos. 103, 104, 105, 106). On August 21, 2026, Defendants filed their memorandum of law in opposition. (ECF No. 111 ("Opp.").) On September 3, 2026, Richiez filed his reply in further support of class and collective certification. (ECF No. 112 ("Reply").)

## II. Legal Standards

### A. Conditional Collective Certification

The FLSA authorizes "similarly situated" employees to bring a collective action, enabling them to pool their resources in prosecuting their claims. *See* 29 U.S.C. § 216(b); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). "Unlike Rule 23 class actions, FLSA collective actions are opt-in, meaning that a person is not a party to the action 'unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (quoting 29 U.S.C. § 216(b)).

Certification of an FLSA collective operates in two steps. First, where the plaintiff makes the "modest factual showing" that she and potential class members are "similarly situated" as "victims of a common policy or plan that violated the law," the court conditionally certifies a collective action for the purpose of sending notice to potential opt-in plaintiffs. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). The standard for conditional collective certification is "considerably less stringent than the requirements for class certification under Rule 23," *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (quotation marks omitted), because "no showing of numerosity, typicality, commonality and representativeness need be made," *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007). "[T]he Court does not decide issues on the merits or resolve factual disputes." *Marcial v. New Hudson Family Rest. Inc.*, No. 18-CV-663, 2019 WL 1900336, at *3 (S.D.N.Y. Apr. 29, 2019). Instead, "[a]t the conditional certification stage, . . . the Court should draw all inferences in favor of the [p]laintiff." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (cleaned up).

Second, after discovery and upon the defendant's request, the court "must undergo a more stringent factual analysis to determine whether the collective action members are in fact similarly situated." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013); *see also Indergit v. Rite Aid Corp.*, No. 08-CV-9361, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010). "The court may decertify the action if the record reveals that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits." *Hamadou*, 915 F. Supp. 2d at 661.

**B. Class Certification**

Class certification is governed by Federal Rule of Civil Procedure 23. Section (a) requires the party seeking clarification to establish four familiar prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, where the movant seeks certification under section (b)(3), the movant must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating predominance and superiority, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* 23(b)(3)(A)-(D). The movant must also satisfy the implied requirement of ascertainability, "a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason." *Floyd v. City of New York*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). District courts "may not certify a class without making a ruling that each Rule 23 requirement is met." *In re Initial Pub. Offerings Sec. Litig.* ("*IPO*"), 471 F.3d 24, 27 (2d Cir. 2006). The moving party must demonstrate that the proposed class satisfies all of the requirements of Rule 23 by a preponderance of the evidence. *Myers*, 624 F.3d at 547. While the plaintiff's pleadings are assumed to be true for the purposes of a motion for class certification, *see Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978), the court must engage in a "rigorous analysis" to determine whether the purported class "comports with all of the elements of Rule 23," *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005). "[T]he court must resolve any factual disputes connected with this determination." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542, 2025 WL 3240044, at *3 (S.D.N.Y. Nov. 20, 2025). However, any factual determinations made at the certification stage are not binding upon a subsequent factfinder, including the certifying court. *IPO*, 471 F.3d at 41.

## III. Discussion

### A. Single Integrated Enterprise

As a threshold matter, Richiez argues that Defendants should be treated as a single integrated enterprise. (Mem. at 7.) The Court agrees.

Under the FLSA and the NYLL, a defendant must meet the statutory definition of an "employer" to be held liable on wage and hour claims. *Sanchez v. Clipper Realty, Inc.*, No. 21-

CV-8502, 2026 WL 496555, at *5 (S.D.N.Y. Feb. 23, 2026). However, the FLSA and the NYLL broadly define "employer." *See Falk v. Brennan*, 414 U.S. 190, 195 (1973) (recognizing "the expansiveness of [FLSA's] definition of 'employer'"); *Jiao v. Shi Ya Chen*, No. 03-CV-165, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."). "The joint employer doctrine, along with the 'single employer' (or 'single integrated employer') doctrines have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer." *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (cleaned up).

In determining "whether a group of distinct but closely affiliated entities should be treated as a single employer . . . courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (internal citations omitted); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).

The Court has little trouble concluding that Defendants operated as a single enterprise—a determination that Defendants do not resist. (*See generally* Opp.) The Joint Stipulation of Facts establishes that (1) "Defendants all have and have had uniform payroll system[s] and policies," (2) "[t]he corporate defendants are all managed out of two offices" and that "[t]he Bronx office handles the daily supervision of all the corporate defendants' building employees, including its supers and porters working in the Bronx and Manhattan," (3) all corporate defendants share an "executive team" that "sets all policies, pay rates, and makes all strategic decisions for the corporate defendants" in the Great Neck office, and (4) "Schmelzer has owned, in whole or part, controlled, and operated all the corporate defendants." (JSF ¶¶ 6-9, 12). Because "Defendants

have put forth no evidence disputing that they shared common ownership, executive management, and payroll systems and processes . . . [t]he Court therefore determines that Defendants operated as a single integrated enterprise." *Sanchez*, 2026 WL 496555, at *7.

**B. Conditional Collective Certification**

Richiez first moves for conditional certification of a collective action for a collective defined as:

> [A]ll current or former employees of Defendants who performed non-managerial work to maintain Defendants' buildings, including as porters and supers, from November 12, 2021 through May 31, 2026.

(Mem. at 15.) Richiez further requests authorization "to send a notice of pendency of collective action and consent to join form to all prospective members of the collective." (*Id.*)

Richiez readily satisfies the minimal factual burden of showing that the members of the proposed collective action are "similarly situated" because he alleges that they were all manual laborers paid on a biweekly basis in violation of the FLSA. *Myers*, 624 F.3d at 555. In addition to the allegations in the complaint, the Joint Stipulation of Facts[2] establishes that, until May 31, 2026, Defendants paid the putative collective members every other week, and, after that date, Defendants paid the putative collective members every week. (JSF ¶¶ 14-15.)[3] Defendants further concede that the identity of all putative collective members may be ascertained through

[2] In a footnote, Defendants point out that "[t]he putative collective is considerably larger than the putative class." (Opp. at 7 n.1.) True, the Joint Stipulation of Facts largely contains facts pertaining to "Putative Class Members," which it defines as "all current or former employees of Defendants who performed non-managerial work to maintain Defendants' buildings from March 29, 2018 to [July 2, 2026]." (*See* JSF ¶ 1.) But the fact that the time period of the stipulated facts is more expansive does not undercut the applicability of each fact to the *narrower* proposed collective. In conceding the facts as to the Putative Class Members, Defendants also conceded the facts as to the putative collective.

[3] Additionally, Defendants concede that, at least until August 31, 2023, a series of collective bargaining agreement required Defendants to pay all putative collective members weekly. (*Id.* ¶¶ 16-18.)

Defendants' employment records, and Defendants house all such records in their Great Neck and Bronx offices. (*Id.* ¶¶ 11, 20.) Thus, Richiez satisfies the "low bar" of showing that he and the putative collective members are "similarly situated," as Richiez sufficiently alleges—and Defendants admit—that the members of the putative collective were paid on parallel schedules. *See Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 538 (S.D.N.Y. 2025).

Defendants oppose conditional collective certification on only one basis: "Failure to establish a policy or practice that violates the FLSA is also a failure to satisfy the conditions requisite for a collective action under FLSA § 216(b)." (Opp. at 9.) Put differently, Defendants assert that Richiez cannot succeed on his motion for collective certification because he cannot establish an FLSA violation. (*Id.*)

Defendants therefore lodge a challenge to the merits of Richiez's FLSA claim under the guise of opposing certification of a collective action. But it is well established that the Court cannot resolve substantive issues on a procedural motion for collective certification. *See Recio v. D'Almonte Enterprises Parking Garage, Inc.*, 680 F. Supp. 3d 448, 455 (S.D.N.Y. 2023) ("[A] court should not weigh the merits of the underlying claims at the conditional approval stage, and must take care to avoid even the appearance of judicial endorsement of the merits of the action." (cleaned up)); *Lynch*, 491 F. Supp. 2d at 368 ("[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."). Defendants' sole challenge to conditional certification therefore fails.

Because Richiez demonstrates that he and the putative collective are "similarly situated" based on the similarities of their pay schedules from Defendants, the Court grants Richiez's request for conditional certification under FLSA. *See Jackson*, 298 F.R.D. at 162.

**C. Class Certification**

Finally, Richiez moves to certify a class under Fed. R. Civ. P. 23(a) and 23(b)(3) for the NYLL claim on behalf of a class defined as:

> [A]ll current or former employees of Defendants who performed non-managerial work to maintain Defendants' buildings, including as porters and supers, from March 29, 2018 through May 31, 2026.

(Mem. at 8.) Additionally, Richiez proposes himself as class representative and his counsel as class counsel. (*Id.* at 14-15.)

Defendants' central objection to class certification is jurisdictional and contingent on their defunct challenge to the merits of Richiez's FLSA claim. Specifically, Defendants first contend that the complaint fails to state a claim under the FLSA before arguing that "the absence of a valid federal claim deprives this Court of subject matter jurisdiction to entertain this matter." (Opp. at 10.) While Defendants nominally challenge the satisfaction of the requirements for class certification under Rule 23, Defendants offer no argument to support their challenge of any such requirement. (*Id.* at 13.)

At the outset, the Court rejects the only objection to class certification that Defendants actually support with argumentation. This Court has supplemental jurisdiction over Richiez's NYLL claims, as Richiez's NYLL and FLSA claims "arise out of the same compensation policies and practices," and therefore "clearly derive from such a common nucleus of operative facts." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011); *see also* 28 U.S.C. § 1367(a).

In light of Defendants' (albeit nominal) challenge to Richiez's satisfaction of the Rule 23 requirements for class certification, the Court analyzes each requirement in turn. To refresh, Rule 23(a) imposes four requirements in any class action: numerosity, commonality, typicality, and adequacy. Courts in this Circuit often apply ascertainability as a fifth, implied requirement. *Floyd*, 283 F.R.D. at 171. Because Richiez seeks class certification under Rule 23(b)(3), he must also show that class questions predominate over individual questions, and the superiority of proceeding via class action.

"[N]umerosity is presumed at a level of [forty] members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The parties agree that "Defendants employed [forty] or more Putative Class Members" from March 29, 2018 to July 2, 2026. (JSF ¶ 3.) "Moreover, because the proposed class spans [eight] years, its membership likely substantially exceeds this amount." *Jackson*, 298 F.R.D. at 162. Numerosity is therefore satisfied.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," as well as the existence of "common questions . . . capable of generat[ing] common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349-50 (quotation marks omitted). "Plaintiffs may meet the commonality requirement where the individual circumstances of class members differ, but their injuries derive from a unitary course of conduct by a single system." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (cleaned up). Here, Richiez sufficiently alleges that the injuries of the putative class arise from a "unitary course of conduct"—Defendants' payment schedule. Unsurprisingly, then, the putative class shares legal questions, such as whether Defendants' pay schedule violated NYLL § 191(a)(1) and whether the class members qualify as manual laborers whose pay frequency is governed by that subsection. (*See* Mem. at 9.) The Joint Stipulation of Facts demonstrates that

the putative class shares factual questions and answers: It establishes that all class members "spent more than 25% of their working time performing physical labor" and were paid "every other week" until June 1, 2026. (JSF ¶¶ 5, 14.) Commonality is satisfied.

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). In the Second Circuit, "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis" of the two factors. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Thus, for the same reasons that the Court concludes commonality is satisfied, typicality is also satisfied: Each class member's claim arises from Defendants' uniform pay frequency, and each class member will argue that they qualify as a manual laborer, such that Defendants' former biweekly pay schedule violates NYLL § 191(1)(a)(i).

"Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128-29 (S.D.N.Y. 2012). Both are satisfied here. First, counsel for Richiez "has performed substantial work . . . prosecuting the claims in this action" and "deals almost exclusively with employee rights" with "substantial experience prosecuting and settling wage and hour class actions," including a multitude of cases in this district. (ECF No. 106 ¶¶ 5-6.) Second, counsel for Richiez represents that he is "not aware of any conflicts between Plaintiff and potential class members," and Richiez has actively participated throughout the course of litigation thus far. (ECF No. 106 ¶¶ 3-4.) *See also Lizondro-Garcia*, 300 F.R.D. at 176 (concluding that adequacy was satisfied where "counsel for plaintiffs represents that the

named plaintiffs have no conflicts with any of the class members and have actively participated in discovery and settlement negotiations"). Adequacy is satisfied.

The implied requirement of ascertainability asks whether "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009). In light of Defendants' non-opposition to ascertainability, the parties' stipulated contours of the putative class (*see* JSF ¶¶ 1-2, 4-5), and the fact that "wage and hour classes are routinely found to be ascertainable in this District," *Sanchez*, 2026 WL 496555, at *12, the Court concludes that ascertainability is also satisfied.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof," *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). As previously discussed, Richiez and the members of the proposed class are unified by a common legal theory: Defendants' biweekly pay schedule violated NYLL § 191(1)(a)(i) because each class member is a manual laborer. While each proposed class member's qualification as a "manual laborer" may have entailed an individualized inquiry, *see Sanchez*, 2026 WL 496555, at *11, Defendants concede that the entirety of the putative class "spent more than 25% of their working time performing physical labor" (JSF ¶ 5) and therefore qualifies as a manual laborer, *see* N.Y. Dep't of Lab. Op. Letter, No. RO-09-0066 (May 21, 2009) (interpreting "manual worker" to include "employees who spend more than 25 percent of their working time performing physical labor"); *see also*

*Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 225 (S.D.N.Y. 2023) (same). Predominance is satisfied.

Finally, courts have concluded that proceeding by way of class action is superior to other potential avenues of adjudication where a class action can "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). The Court concludes that "[a] class action is a superior method to individually litigating the NYLL claims," *Jackson*, 298 F.R.D. at 169, because "potential class members are aggrieved by the same policy," and "the damages suffered are small in relation to the expense and burden of individual litigation." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).[4]

Because the Court concludes that all of the prerequisites under Rule 23(a) and Rule 23(b)(3) have been satisfied, the Court grants Richiez's motion for class certification.

### D. Class Counsel and Class Representative

Having granted Richiez's motion for class certification, the Court "must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g), in turn, requires the Court to appoint class counsel for a certified class, considering "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling

[4] In a footnote, Defendants point out that "there is already an action involving the same parties pending in the Supreme Court of the State of New York." (Opp. at 12 n.2.) Indeed, on June 13, 2019, Richiez and three other plaintiffs filed an action against Tryax and several of the Corporate Defendants and Individual Defendants in state court. *See* Complaint, *Gutierrez et al. v. Tryax Realty Management, Inc. et al.*, Index No. 26968/2019E (N.Y. Sup. Ct. June 13, 2019). But in that action, the plaintiffs allege claims for hostile work environment and discrimination under the New York City Charter and Administrative Code, and those claims are in no way predicated on plaintiffs' payment schedule. *See generally id.* Thus, the "extent and nature" of these factually divorced claims do not undermine the superiority of proceeding by class action. *See* Fed. R. Civ. P. 23(b)(3)(B).

class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Thus, "[f]or substantially the same reasons that the Court finds that Plaintiff[] and [his] counsel have satisfied the adequacy requirement, the Court determines that they will continue to diligently pursue this litigation." *Sanchez*, 2026 WL 496555, at *14. Richiez is hereby appointed class representative, and his counsel is hereby appointed class counsel.

**E. Hybrid Notice to the Class and Collective**

Richiez requests authorization to send two notices: (1) "a hybrid notice to the putative members of both the class and collective" and (2) "a simpler class action notice to putative class members who began work less than three years prior to the lawsuit." (Mem. at 19.) Richiez further proposes that the Court order the parties to confer and submit proposed notices following the Court's decision. (*Id.*) Finally, Richiez requests that the notices be sent in both English and Spanish. (*Id.* at 20.) Defendants raise no opposition to Richiez's proposed notice structure. (*See generally* Opp.)

While the form and contents of court-authorized notice are not "specifically outlined" by the FLSA, *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007), courts in this district "consider the overarching policies of the notice . . . which include achieving judicial efficiency and lowering individual costs for plaintiffs," *Liping Dai v. Lychee House*, Inc., No. 17-CV-6197, 2018 WL 4360772, at *6 (S.D.N.Y. Aug. 29, 2018). Courts have "broad discretion" to "monitor[] preparation and distribution of the [n]otice to ensure that it is timely, accurate, and informative." *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946, 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (quotation marks omitted).

Because Richiez's motion did not include a proposed notice, the Court directs the parties to "submit a joint proposed notice to the Court for approval in order to ensure that the drafting and distribution of the notice is timely, accurate, and informative" within fourteen days of the date of this Order. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323, 2013 WL 1040052, at *28 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-CV-6323, 2013 WL 2473039 (S.D.N.Y. June 7, 2013).

As to the contents and structure of the notice, the Court anticipates adopting Richiez's proposals to send dual-track, hybrid notices, and to send such notices in both English and Spanish. *See id.* ("[I]n the event of a dispute, the Court likely will lean toward [Richiez's] proposal, since [Defendants] did not address the [n]otice issue when it had the opportunity in connection with this motion."). Additionally, the Court advises the parties that the notices should "include[] the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries." *Jackson*, 298 F.R.D. at 169-70. The notices should also "advise potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt in," as such "information will aid potential plaintiffs in determining whether they would like to opt in." *Id.* at 170.

**F. Production of Employee Contact Information**

Finally, Richiez asks the Court compel Defendants to "produce a list in electronic format setting forth the names, telephone numbers, email addresses, and last known addresses of the putative class members" following certification of class action on Richiez's NYLL claims. (Mem. at 20.) Defendants do not challenge this request, "which is common in wage and hour

actions to facilitate the notice process." *Jackson*, 298 F.R.D. at 170. The Court orders Defendants to provide the information in electronically readable form within fourteen days of the date of this Order.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED that:

Plaintiff's motion for class and collective certification is GRANTED.

Plaintiff's counsel is appointed as class counsel;

Plaintiff is appointed as class representative;

The parties shall submit a joint proposed notice in the form and manner described in this Order within fourteen days; and

Defendants shall provide Plaintiff's counsel with identification information in the form and manner described in this Order within fourteen days.

The Clerk of Court is directed to close the motion at ECF No. 102.

SO ORDERED.

Dated: October 13, 2026
New York, New York

J. PAUL OETKEN
United States District Judge